Case 16-23381-TPA    Doc 85    Filed 03/07/18    Entered 03/07/18 14:43:11    Desc Main
Document    Page 1 of 17

FILED
3/7/18 1:30 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| ERIN B. NYPAVER,<br>*Debtor.* | : <br> : <br> : | Case No. 16-23381-TPA<br>Chapter 7 |
| ERIN B. NYPAVER,<br>*Movant,* | : <br> : <br> : | Related to Doc. No. 52, 63, 68. |
| v. | : <br> : | |
| THOMAS J. NYPAVER,<br>*Respondent.* | : <br> : | |

*Appearances:*  Lauren M. Lamb, Esq. for the Movant Erin. B. Nypaver
Jason A. Spak, Esq. for the Respondent Thomas J. Nypaver

**MEMORANDUM OPINION**

Following the closure of this case the Respondent, Thomas J. Nypaver – the Debtor's father – obtained a default judgment against the Debtor in state court. The Debtor, believing the debt upon which the default judgment was based to have been discharged in bankruptcy, successfully moved to reopen the case and then subsequently filed a ***Motion for Determination of Dischargeability of Debt Claimed in Proof of Claim 1-1*** ("Dischargeability Motion") at Document No. 52 to which the Respondent filed his ***Response*** at Document No. 57.[1] The Parties have both agreed that an evidentiary hearing is not necessary in this instance and have stipulated to all material facts. *See Joint Pre-Trial Statement Between Debtor and Respondent* ("Joint Pretrial")*,* at Document No. 80. Both sides submitted *Motions for Summary Judgment*.

---

1   The Court's jurisdiction under *28 U.S.C. §§157* and *1334* was not at issue. This is a core proceeding pursuant to *§§157(b)(2)(I)* and *(O)*.

1

Oral argument on these motions was held and for the reasons set forth below, the Court finds that the debt in question was discharged and grants summary judgment for the Debtor. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits, and arguments of Counsel, regardless of whether they are specifically referred to in this Opinion.

## FACTS

Debtor began attending Seton Hill University in the fall of 2008, at which time the Respondent also began funding her education with federal "Parent PLUS" loans. On April 29, 2011, the Debtor signed a promissory note prepared by the Respondent in which the Debtor agreed to pay her father for the principal sum of all current and future Parent PLUS loans taken out by him on her behalf, plus interest. The promissory note called for payments to be made in monthly installments to begin upon her withdrawal or graduation from Seton Hill University's undergraduate program, requiring the entire balance to become due if the Debtor defaulted. In their Joint Pretrial the Parties stipulated that they intended the agreement found in the promissory note to be a "loan," and hereinafter, the agreement and the accompanying debt will be referred to as "the Loan." The Debtor graduated in May 2014 with a music degree. She made payments to the Respondent on the Loan according to the terms of the promissory note from May 2014 through December 2014, at which point her payments ceased.

## PROCEDURAL HISTORY

The Respondent commenced a civil lawsuit against the Debtor on February 3, 2015 in the Allegheny County Court of Common Pleas at Case No. GD-15-001862 based on her default on the Loan. On September 9, 2016, the Debtor filed a Chapter 7 bankruptcy petition, staying the Allegheny County action, and she was eventually granted a discharge pursuant to *11 U.S.C. § 727*

on January 11, 2017. After the bankruptcy case was closed, on March 17, 2017 the Respondent took the necessary steps in the Allegheny County action to secure a default judgment against the Debtor in the amount of $88,325.04. On April 11, 2017, the Debtor filed a *Motion to Reopen* her bankruptcy case (Doc. No. 32) and a *Motion to Enforce Discharge Order* (Doc. No. 35).

On May 18, 2017, a hearing was held on the Debtor's *Motion to Reopen* and *Motion to Enforce the Discharge*. The Order from the May 18th hearing (Doc. No. 45) granted the *Motion to Reopen* and required the Respondent to either file a proof of claim as to the debt represented by the state court default judgment or file a notice acknowledging that the debt had been discharged. The Respondent subsequently filed a proof of claim for $88,325.04, stating the claim was based on a "money loan for educational benefit." The Debtor then filed her *Dischargeability Motion*. At the initial hearing on the *Dischargeability Motion* the Respondent, who prior thereto had been acting *pro se*, was represented by Counsel. This hearing resulted in the Court issuing its standard Pretrial Scheduling Order entered at Document No. 61, allowing for a period of discovery.[2] Thereafter *Motions for Summary Judgment* from both Parties were timely filed.

## SUMMARY JUDGMENT STANDARD

For purposes of resolving a summary judgment motion, *Fed.R.Civ.P. 56* is made applicable to bankruptcy proceedings through *Fed.R.Bankr.P.* 7056. Summary judgment is appropriate if the pleadings, depositions, supporting affidavits, answers to interrogatories and admissions that are part of the record demonstrate that there exists no genuine issue of material

---

[2] Although neither Party raised the issue, and since all elements of due process had been met, without objection, the Court has treated the *Dischargeability Motion* as a "Complaint to Determine Dischargeability" filed pursuant to *Fed.R.Bankr.P. 4007* which allows such matters to be raised at any time. *See Fed.R.Bankr.P. 4007(c), 7001(6).* Accordingly, the Respondent's *Response* has been treated as his "Answer" to the "Complaint."

3

fact and the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Summary judgment is appropriate if no material factual issue exists and the only issue before the Court is a legal issue. *Earth Data Int'l of N.C., LLC, v. STV, Inc.,* 159 F.Supp.2d 844 (E.D. Pa. 2001); *In re Air Nail Co., Inc.,* 329 B.R. 512 (Bankr. W.D. Pa. 2005). A motion for summary judgment may only be granted when there is no dispute of material fact and the moving party is entitled to judgment as a matter of law. *Med. Protective Co. v. Watkins,* 198 F.3d 100, 103 (3d Cir. 1999) (quoting *Ambruster v. Unisys Corp.,* 32 F.3d 768, 777 (3d Cir. 1994)). Since no material facts are at issue in this matter, and the Parties agree the matter is capable of resolution based upon the cross motions for the summary judgment, the Court will proceed to do so.

## DISCUSSION

The narrow issue for the Court is whether the Loan that Respondent made to the Debtor to finance her college education was discharged in her bankruptcy. The Bankruptcy Code includes a lengthy list of different types of debt that are excepted from discharge. *See 11 U.S.C. §523(a)*. The Parties agree that the focus in the present matter is on the exception to discharge provided by *Section 523(a)(8)*. Before undertaking a closer examination of that provision, it is important to recognize the general approach that must be followed by the Court in determining whether the debt is excepted from discharge.

Courts construe exceptions to discharge narrowly against the creditor in consideration of the underlying rehabilitative policy of the Bankruptcy Code. *In re Mehta*, 310 F.3d 308, 311 (3d Cir. 2013); *In re Pelkowski*, 990 F.2d 737, 744 (3d Cir. 1993). The Supreme Court has stated that exceptions to discharge "should be confined to those plainly expressed."

*Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998); *Gleason v. Thaw*, 236 U.S. 558, 562 (1915). *See also Bullock v. BankCampaign, N.A.*, 569 U.S. 267, 275 (2013).

Also of relevance here are the rules for statutory interpretation. In interpreting a statute, a court must begin its inquiry with the statute's text, since the plain language of the statute is the best indicator of Congress's intent. *Mehta, supra*, 310 F.3d at 311. The terms of a statute must be read in a way that is consistent and avoids absurd results. *In re Klaas*, 858 F.3d 820, 829-30 (3d Cir. 2017). Furthermore, the text of a statute must be read as a whole, with the entire statute and its overall context an important consideration. *Dolan v. U.S. Postal Service*, 546 U.S. 481, 486 (2006).

With the above principles in mind, the Court turns its attention to *Section 523(a)(8)*, which provides in relevant part:

> a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt–
> ...
> (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for–
>
>> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>>
>> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>>
>> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual;

5

*11 U.S.C. §523(a)(8)*. It can readily be seen that the Loan does not fit within *Section 523(a)(8)(A)(i)* because it was not made, insured or guaranteed by a governmental unit or nonprofit institution, and the Parties so agree.[3]

Although it is less apparent from the face of the statute itself, the Parties also agree that the Loan does not fit within *Section 523(a)(8)(B)*. That is because the Loan is not a "qualified educational loan" as defined by *Section 221(d)(1)* of the Internal Revenue Code ("IRC") of 1986. The IRC makes clear that, pursuant to *26 U.S.C. §§267(b)* and *707(b)(1)*, qualified educational loans shall not include debts owed to "related persons." *26 U.S.C. §221(d)(1)*. *Section 267(b)* of the IRC defines "Relationships" as members of a family, as defined in subsection *(c)(4),* which in turn states that "the family of an individual shall include only his brothers and sisters (whether by whole or half blood), spouse, *ancestors*, and lineal descendants." *26 U.S.C. §267(c)(4)* (emphasis added). Therefore, a loan owed to a father, as an ancestor, is specifically excluded from the definition of a "qualified education loan" under the IRC, and is thus excluded from the exception to discharge found in *11 U.S.C. §523(a)(8)(B)*. That leaves *Section 523(a)(8)(A)(ii)* as the lone remaining possible ground for excepting the Loan from discharge. It is at this point where the Parties part company and disagree, such disagreement centering on the meaning of the term "educational benefit," which is not defined anywhere in the Bankruptcy Code.

The Respondent argues that *Section 523(a)(8)* is written in the disjunctive, so that notwithstanding that the Loan is not a "qualified education loan" under *Section 523(a)(8)(B)*, it

---

[3]  Unlike the typical student loan dischargeability case, the Parties agree that an "undue hardship" analysis is not a consideration in this matter if the Court determines *Section 523(a)(8)* is otherwise inapplicable.

6

can still be an "obligation to repay funds received as an educational benefit" under *Section 523(a)(8)(A)(ii)*. In making this argument the Respondent emphasizes – and the Debtor does not dispute – that an educational benefit was gleaned from the Loan since the Debtor used the loaned funds to attend and graduate from Seton Hill with a degree in music.[4] The Debtor argues that the various provisions in *Section 523(a)(8)* must be viewed as an entirety, not as isolated units. According to the Debtor, since educational loans are specifically addressed elsewhere in *Section 523(a)(8)*, Congress could not have intended the term "educational benefit" to include loans, generally.

There is a split of authority on the question of whether the term "educational benefit" in *Section 523(a)(8)(A)(ii)* can include a loan such as the one under consideration in the present case. Generally speaking, this split breaks down into those cases finding that so long as the purpose of a loan was to provide for education it can constitute an educational benefit under *Section 523(a)(8(A)(ii)* (hereinafter, the "Broad View"), and those cases finding that an educational benefit is something distinct from a loan, and therefore a loan in and of itself cannot be an educational benefit under *Section (a)(8)(A)(ii)* (hereinafter "Narrow View").

In urging the adoption of the Broad View, the Respondent relies heavily upon, *Beesley v. Royal Bank of Canada (In re Beesley)*, 2013 WL 5134404 (Bankr. W.D. Pa. 2013), a case from this District. The *Beesley* court found that, pursuant to *Section 523(a)(8)(A)(ii),* a line of credit obtained by the debtor from a private Canadian lending institution and used by her to pay

---

[4] While the Debtor agreed the loan was used for college she "quibbles" with the contention that the funds resulted in an "educational benefit" under the facts of this case. Here, the monies received from the Respondent clearly met the statutory definition of an "educational benefit."

7

for tuition, room and board for medical school was nondischargeable. *Id.* at *1-2. The *Beesley* court thus followed the Broad View, which may well have been the majority view at the time.[5]

The *Beesley* court found that funds received for an educational benefit included loans, generally, stating that the appropriate focus of the inquiry was the purpose of the transaction, i.e., whether it was to secure an educational benefit. *Id.* at *4. Since the debtor's loan was used to pay educational expenses, the *Beesley* court found that the loan at issue was excepted from discharge under *Section 523(A)(8)(A)(ii)*. *Id.* at *5. Consideration of how this conclusion might impact other potentially conflicting subparts under *Section 523(a)(8)* did not play a role in the decision and was apparently not raised as a significant issue by the parties.[6]

The remaining Broad View cases upon which the Respondent relies both utilize the same approach as *Beesley*, focusing solely on the purpose of the debt at the time it was incurred,

---

[5] The only cases cited herein by the Debtor in support of the Narrow View post-date *Beesley*. At the hearing on summary judgment the Court inquired as to whether any contrary case law favoring the Debtor existed at the time of *Beesley*. *See Audio Transcript of Proceedings* dated Nov. 21, 2017, 10:23:50 to 10:25:03. The Respondent replied that it was his "hunch" that such case law did not exist at that time. After conducting further research following the hearing, the Court found several cases decided prior to *Beesley* that had adopted the Narrow View by construing the phrase "funds received as an educational benefit" as not including loans similar to the one under consideration here. *See London-Marble v. Sterling,* 2008 WL 2705374 (D. Ariz. 2008); *In re Scott,* 287 B.R. 470 (Bankr. E.D. Mo. 2002); *In re Meinhart,* 211 B.R. 750 (Bankr. D. Colo. 1997); *McClure v. Action Career Training,* 210 B.R. 985 (Bankr. N.D. Tex. 1997). Still, however, at the time *Beesley* was decided the Broad View does appear to have also been the majority view, though it is by no means clear whether that remains true today.

[6] Notably, the debtor in *Beesley* did not cite any case law reaching the conclusion that an educational benefit under *Section 523(a)(8)(A)(ii)* does not include loans, generally, so the *Beesley* court was deprived of that perspective in reaching its decision. *Id.* at *3 and *See supra note 3 and accompanying text*. Additionally, once it found the loan in question to be excepted from discharge under *Section 523(a)(8)(A)(ii),* the *Beesley* court did not even need to consider whether the alternative ground under *Section 523(a)(8)(B)* that was advanced by the creditor might apply, so it was not faced with a need for harmonization of the two provisions. *Id.* at *5.

8

and whether that purpose was for payment of educational expenses. *See Benson v. Corbin*, 506 B.R. 287 (Bankr. W.D. Wash. 2014) (employing the educational purpose standard, the court found that the debt owed to a cosigner of a federally insured loan was nondischargeable as a *Section 523(a)(8)(A)(ii)* educational benefit); *Brown v. Rust*, 510 B.R. 562 (Bankr. E.D. Ky. 2014) (debtor's obligation to her loan cosigner was found nondischargable under *Section 523(a)(8)(A)(ii)* since the loan document stated it was to be used for "educational expenses" and the court found that the "primary, and the cases suggest only, focus" was the purpose of the loan). As with *Beesley*, neither *Corbin* nor *Rust* addressed in any detail how focusing solely on the educational benefit aspect of the loan under *Section 523(a)(8)(A)(ii)* comported with a construction of *Section 523(a)(8)* as a whole. *Corbin* did recognize that construing *Section 523(a)(8)(A)(ii)* so broadly as to include loans would mean that *Section 523(a)(8)(A)(i)* is "almost subsumed by subsection (ii)", 506 B.R. at 296, but it adopted the broad construction in any event. [7]

The primary support cited by the Debtor in her argument for application of the Narrow View, i.e., the term "educational benefit" in *Section 523(a)(8)(A)(ii)* should not be construed to include the Loan, is *Campbell v. Citibank, N.A.*, 547 B.R. 49 (Bankr. E.D.N.Y. 2016). In *Campbell*, the debtor had obtained a loan that she used in order to prepare for the bar exam following law school. She filed a complaint seeking a determination that the loan would be

---

[7] It is worth noting that *Beesley* and the other cases relied upon by the Respondent are distinguishable here since the lender is the Debtor's father and not some unrelated commercial entity. The debt at issue in *Rust* did involve a family friend who was a cosigner for the debtor, but the court justified an exception to discharge on the basis that by acting as an accommodation party on the loan the family friend had made it easier for the debtor to secure the loan, thus furthering the policy of encouraging lenders to provide educational loans. By contrast, the Loan here was strictly an intra-family matter, and there is no evidence that it was of any benefit with respect to the Respondent being able to secure the Parent PLUS loan.

discharged. Two defendants sought dismissal of the complaint based on their belief that the bar exam loan was excepted from discharge under *Section 523(a)(8)(A)(ii)* because it was used for an "educational benefit." *Id.* at 54. The *Campbell* court found that if the term "educational benefit" was intended to include just *any* educational loan, there would have been no need for Congress to classify specific types of educational loans given by certain types of lenders, as the statute does in *Sections 523(a)(8)(A)(i)* and *523(a)(8)(B)*. *Id.* at 55. The court went on to state that if *Section 523(a)(8)(A)(ii)* is interpreted to extend to all education-related loans it would render both *Sections 523(a)(8)(A)(i)* and *(B)* superfluous. *Id.*

The court in *Campbell* also relied on the statutory canon of construction of *noscitur a sociis*. *Id.* This canon, which literally means "a word is known by the company it keeps," posits that when words are in a list, each word is presumed to have a similar meaning. Based on this canon, the court deduced that an educational benefit should be interpreted along the lines of a scholarship or stipend, which are funds that are usually not required to be repaid, contrary to a loan. *Id.*

The *Campbell* court also cited to legislative history in support of its conclusion, noting that from its adoption in 1978 through 1990 the various iterations of *Section 523(a)(8)* referred only to "educational loans." The phrase "educational benefit" first appeared in *Section 523(a)(8)* as a result of the 1990 amendments to the Bankruptcy Code. The *Campbell* court pointed to testimony from the Congressional hearings on the 1990 amendments to the effect that educational benefits, scholarships and stipends were being added to *Section 523(a)(8)* to make sure they received the same treatment as "student loans" with regard to restrictions on dischargeability in bankruptcy." *Id.* at 56. This indicates that Congress recognized a distinction between an "educational benefit" and a "loan," and in fact the same legislative testimony pointed to "VA

10

benefits" as an example of the former, something clearly not a loan. *Id.* Treating a loan, generally, as a species of educational benefit under *Section 523(a)(8)(a)(ii)* thus runs counter to the legislative intent.

Even more recent is the decision in *Dufrane v. Navient Solutions, Inc.* 566 B.R. 28, 50 (C.D. Cal. 2017), where the court agreed with the reasoning of *Campbell* and found that *Section 523(a)(8)(A)(ii)* excepts from discharge educational debts *other than loans*, which it found is consistent with the canons of statutory construction and the policy of the Bankruptcy Code to strictly construe exceptions to discharge. The *Dufrane* court also noted that in 2005 Congress made *Section 523(a)(8)(A)(ii)* an independent category that is detached from the obligations described by the phrase "educational benefit overpayment" or "loan" in *Section 523(a)(8)(A)(i)* and "any other educational loan" in Section *523(a)(8)(B)*. *See In re Christoph*, 527 B.R. 624, 634 (9th Cir. BAP 2015)("Congress intended each subsection to have a distinct function and to target different kinds of debts."). *See also In re Essangui*, 573 B.R. 614 (Bankr. D. Md. 2017) (finding that the position adopted in *Campbell* and *Dufrane* to be more faithful to the actual language of the statute enacted by Congress).

Having carefully considered both lines of authority as to the proper construction to be given to the discharge exception found in *Section 523(a)(8)(A)(ii),* the Court finds itself in agreement with the following sentiment as expressed by the court in *Essangui* which recently considered this very issue:

> Although both the [Broad View] and [Narrow View] decisions on this issue are thoughtfully written and strive to implement Congress's intent, the Court finds the [Narrow View's] position more faithful to the actual language of the statute enacted by Congress.

11

*Essangui*, 573 B.R. at 622. The *Essangui* court came to this conclusion after engaging in an extensive review of the history of *Section 523(a)(8)* from its inception up to the present, as well as the pertinent cases from both views construing the provision. It cited three major "observations" to support this conclusion, each of which the Court finds persuasive.

First, the subject of *Section 523(a)(8)(A)(ii)* ("an obligation to repay funds"), is different from the subjects of *Section 523(a)(8)(A)(i)* ("an educational benefit overpayment or loan") and *Section 523(a)(8)(B)* ("any other educational loan"). Although common usage of the word "funds" could include the proceeds of a loan, the structure of *Section 523(a)(8)* suggests a more limited and tailored definition. 573 B.R. at 622-23.

Second, *Section 523(a)(8)(A)(ii)* is not focused on just any obligation to repay funds, but only those for which the funds were received "as an educational benefit , scholarship or stipend." The use by Congress of the preposition "as" instead of "for" here is significant because the former commonly refers to the role or character of something while the latter commonly signals the object or purpose of something. *Id*. at 623. This suggests that the inquiry of the Broad View cases which looks solely to the purpose of the loan may be misguided. Also, the three specific kinds of funds within *Section 523(a)(8)(A)(ii)* must be read in a "coherent manner," meaning that the definition or scope of educational benefit should align with that of scholarship and stipend – both terms representing funds extended for educational purposes that generally do not need to be repaid unless the recipient fails to graduate or meet other specified requirements. *Id.* The *Essangui* court thus agreed with the *noscitur a sociis* approach from *Campbell* discussed previously.

Third, and perhaps most significantly, interpreting *Section 523(a)(8)(A)(ii)* to include loans used for educational purposes renders subsections *(A)(i)* and *(B)* "largely

meaningless." *Id.* at 624.  The expansive reading of *Section 523(a)(8)(A)(ii)* under the Broad View captures within its scope any public or private loan that is used by a debtor to obtain an educational benefit.  If that was the Congressional intent, then *Section 523(a)(8)(B),* which was added to the Bankruptcy Code at the same time as *Section 523(a)(8)(A)(ii),* would have been unnecessary and rendered surplusage.  *Id.*  (citing *Marx v. General Revenue Corp.*, 568 U.S. 371, 386 (2013) for the proposition that the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme).

In contrast to the problems associated with the Broad View as expressed in these cogent observations, the Narrow View not only gives meaning to all of the subsections of *Section 523(a)(8),* it is also more consistent with the well-recognized injunction that exceptions to discharge are to be narrowly construed in favor of debtors and confined to those plainly expressed. For instance, In *Kawaauhau*, *supra,* the Supreme Court was faced with an issue similar to the question presented here.  The issue there was whether a judgment for a medical malpractice claim based on negligent or reckless conduct was nondischargeable under *Section 523(a)(6)* which excepts from discharge debts for willful or malicious injury by a debtor to another entity.  The Supreme Court found that to extend this exception to a nonintentional tort would altogether remove the need for two other exceptions to discharge*, Section 523(a)(9)* and *(a)(12)* – the former specifically exempting debts for personal injury or death resulting from a debtor driving under the influence, and the latter*,* excepting debts for one's malicious or reckless failure to meet specified obligations owed to a federal depository institution regulatory agency.  523 U.S. at 61-62.  In so holding the Court stated it was hesitant to interpret a congressional enactment in a way that renders other portions of the same law superfluous.  *Id.; Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825 (1988).

As noted above, such a problematic result would occur in this instance if the Court were to adopt the Respondent's proposed treatment of the Loan. If this Court were to determine that an "educational benefit" includes a loan between a father and daughter, the specific exclusion of loans between family members from the definition of a "qualified educational loan" in Section *523(a)(8)(B)* would be rendered ineffectual and superfluous. Stated differently, finding a loan between family members to be nondischargeable under *Section 523(a)(8)(A)(ii)* would render the remaining subsections of *Section 523(a)(8)* contradictory.

At argument on the motions for summary judgment, the Court asked the Respondent how the Loan could be excepted from discharge under *Section 523(a)(8)(A)(ii)* when the definition of educational loans in *Section 523(a)(8)(B)* excludes loans owed to "ancestors." The Respondent's only answer to this inquiry (as also set forth in his *Reply to Debtor's Response at ECF No. 76,* Doc. No. 81) was that *11 U.S.C. § 523(a)(8)* "is worded in the alternative." *See Audio Recording of the Proceedings,* dated Nov. 21, 2017 10:28:50. The Respondent claimed that even if the Loan was not covered by the language of *Sections 523(a)(8)(A)(i)* or *(B),* it could therefore still be nondischargeable under *Section 523(a)(8)(A)(ii). Id.* at 10:28:16 to 10:29:30. While this argument may be sound as a matter of grammatical logic, it does not address the concomitant problem that results from broadening the scope of *Section 523(a)(8)(A)(ii)* to the point that it includes an intra-family loan.

Even though the relevant sections are in the disjunctive, broadening *Section 523(a)(8)(A)(ii)* to include a loan between close family members would still render *Section 523(a)(8)(B)* superfluous. If anything, the Respondent's argument that the sections are "disjunctive" supports the Debtor's argument. The fact that Congress amended *Section 523(a)(8)* in 2005 to contain three disjunctive subsections more likely indicates that Congress intended

14

*Section 523(a)(8)(A)(ii)* to cover debts totally different from the other two subsections. *See Essangui, supra* ("when Congress chooses different words in different places within a statute, that choice is intentional and conveys meaning …. By separating the language in subsection (A)(ii) from the government-related loans and programs identified in subsection (A)(i) Congress confirmed that (A)(ii) is a separate category"). Since "loans" are specifically dealt with in the other two sections, obviously *Section 523(a)(8)(A)(ii)* was meant to deal with debts other than loans, generally.

In attempting to distinguish the cases relied upon by the Debtor, the Respondent also argued that the loans examined in those cases were not for an "educational benefit" under *Section 523(a)(8)(A)(ii)* because they were not used entirely for educational purposes. *See Audio Recording of the Proceedings* of Nov. 21, 2017 10:19:51. In this regard, the Respondent specifically referred to *Campbell*, *Dufrane,* and *In re Nunez* 527 B.R. 410 (Bankr. D. Or. 2015). The Respondent's reliance in this regard is misplaced.

In *Campbell* and *Dufrane,* the courts did not rely on the "educational purpose" test in arriving at a decision, but instead analyzed what the phrase "educational benefit" was intended by Congress to encompass. In each circumstance, the court found it was not intended to include the loan at issue. *Campbell,* 547 B.R. at 62; *Dufrane,* 566 B.R. at 40*.* In each of these cases the courts never reached the issue of whether the loans involved an educational benefit, since their inquiries ended once the loans were found to be outside the ambit of *Section 523(a)(8)(A)(ii).*

The Court in *Nunez*, on the other hand, did take a closer look at the "educational purpose" test but under its facts the primary inquiry went to the status of the lender under *Section 523(a)(8)(B)*:

15

> I see no basis to untether the language in § 523(a)(8)(A)(ii) to apply the student loan exception to discharge to "all obligations to repay funds received as an educational benefit, scholarship or stipend," without limitation. Such an interpretation would render § 523(a)(8)(B), the provision that Congress added to § 523(a)(8) in BAPCPA, superfluous and makes no sense. After all, if any educational loans of any kind are excepted from discharge by § 523(a)(8)(A)(ii), what addition does excepting qualified educational loans under the Internal Revenue Code make to the discharge exception? The educational loans excepted from discharge under § 523(a)(8)(B) would be no more than a subset of such loans already excepted from discharge under § 523(a)(8)(A)(ii). Accordingly, I reject the conclusion of some courts that the addition of letter subsection identifiers and a semicolon to familiar language in § 523(a)(8) "must be read as encompassing a broader range of educational benefit obligations."

527 B.R. at 415. As acknowledged by the *Nunez* court, it was undisputed that the loans in question were used solely for educational purposes, but since the court found *Section 523(a)(8)(A)(ii)* did not encompass all student loans, the final determination hinged on a finding that the flight school was not an eligible educational institution under *Section 523(a)(8)(B). Id.* As such, the *Nunez* court found the loan in question subject to the Chapter 7 discharge even though the loan was used for an educational purpose since the loan did not otherwise meet the requirements of *Section 523(a)(8)(B). Id.*

## CONCLUSION

The Respondent's belief that the monies he advanced to his daughter, the Debtor, should be excepted from discharge pursuant to *Section 523(a)(8)(A)(ii)* simply is not supported by a fair reading of the statute in context or the better-reasoned Narrow View case law. The individual components of *Section 523(a)(8)* cannot be applied as if each were in its own vacuum. *Section 523(a)(8)(A)(ii)* must be read and applied in harmony with *Section 523(a)(8)(A)(i) and (B).* Resolution of the pending matter not only requires consideration of the nature of the loan in

16

question and its apparent educational purpose, but also whether the party offering the loan is an entity entitled to nondischargeability protection.  The appropriate statutory harmonization is not achieved if a loan for an educational purpose from father to daughter is specifically excluded from the discharge exception under *Section 523(a)(8)(B)* but nevertheless saved from discharge by stretching the language of *Section 523(a)(8)(A)(ii)*, thereby rendering *Section 523(a)(8)(B)* a nullity.  The Court therefore finds that the Respondent's claim is dischargeable and as a result, the Debtor's *Dischargeability Motion* will be granted.

In light of the issues presented, and as the Court indicated at the time of argument, despite the Debtor's requested relief of attorney fees and sanctions in her *Motion to Enforce Discharge Order*, under the circumstances of the issues involved in this case, the Court finds no bad faith on behalf of the Respondent for his prior pursuit of the state court action following entry of the Debtor's discharge.  No sanctions will therefore be assessed.  Although the status of the Debtor's earlier filed *Motion to Enforce Discharge Order* was not specifically raised in either motion for summary judgment, that Motion will be denied as moot because of the findings and conclusions contained in this Memorandum Opinion.

An order will be entered consistent with this Opinion.

Dated:  March 7, 2018

_____
Thomas P. Agresti, Judge
United States Bankruptcy Court

Case administrator to serve:
    Debtor
        Lauren M. Lamb, Esq.
        Jason A. Spak, Esq.